[Civ. No. 3711. First Appellate District, Division Two.—May 3,
1921.]

SALVADOR ESPINOSA, Respondent, v. Z. B. STUART,
Appellant.

[1] PLEADING—COMPLAINT—SEVERAL COUNTS—GENERAL DEMURRER.—
A court is justified in overruling a demurrer to a complaint on
the ground that it fails to state facts sufficient to constitute a
cause of action, where it contains several counts and one of the
counts is sufficient.

[2] ID.—QUIETING TITLE—UNDUE INFLUENCE—JOINDER OF CAUSES OF
ACTION.—A complaint containing a count in the ordinary form to
quiet title and a count containing commingled and combined al-
legations showing a cause of action for actual undue influence and
a cause of action for implied undue influence by an attorney over

his client, is not subject to demurrer for misjoinder of causes of action, in view of the addition of subdivision 8 to section 427 of the Code of Civil Procedure.

[3] FINDINGS—MATERIAL ALLEGATION OF ONE COUNT—OMISSION WHEN NOT ERRONEOUS.—The failure to find on a material allegation of one count in a complaint is not error where the judgment is based on the allegations of another count and the allegation is not denied.

APPEAL from a judgment of the Superior Court of Monterey County. J. A. Bardin, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. W. Hocker, C. W. Byrer and Z. B. Stuart for Appellant.

C. F. Lacey and R. C. McComish for Respondent.

STURTEVANT, J.—The plaintiff brought an action against the defendant to quiet his title to lands in Monterey County. The plaintiff had judgment and the defendant has appealed under section 953a of the Code of Civil Procedure. The controversy arose out of a transaction which took place between the plaintiff as client and the defendant as his attorney and legal adviser.

Carlos Espinosa was the owner of large tracts of land, including the lands in suit. In January, 1865, he died leaving him surviving a widow, Josefa Boronda de Espinosa, and eight children, including the plaintiff. The father left a will, written in the Spanish language, which was admitted to probate. While the probate proceedings were still pending one of the daughters, Narcisa Duarta, induced the plaintiff, in consideration of certain moneys which had already been paid to him and of certain other moneys which were thereafter to be paid to him, to convey to her his interest in the estate. Later, in 1879, the estate was distributed by a decree which found that the mother was the sole legatee. In 1916 the widow was negotiating a lease of a large tract to the Spreckels Sugar Company, but before the lease was executed some of the children, appearing through the defendant as their attorney, commenced an action attacking her title, on the twenty-third day of September, 1916. Later, September 25, 1916, the widow com-

menced a counter-action to quiet her title against all of the children, including this plaintiff. The defendant appeared in that action as attorney for several of the children. Later, but as early as October, 1916, negotiations were commenced looking toward a settlement of both of the cases just mentioned. Early in those negotiations Mr. Lacey, attorney for the widow, advised Mr. Stuart, attorney for several of the children, that the mother had made her will (which he held in his safe) and, litigation or no litigation, all of the property would, at her death, go to the children, share and share alike. A written agreement of compromise was not signed until March 29, 1917; but the record contains testimony to the effect that that paper contains in writing the proffered compromise discussed between Mr. Lacey and Mr. Stuart, the defendant, in the month of October, 1916. For many years the plaintiff had been absent from Monterey County. In the fall and winter of 1916–17 the defendant was busy trying to locate the plaintiff. Finally, on February 16th or 17th, Mr. Stuart succeeded in calling on the plaintiff at Davis, Yolo County, California. While at Davis defendant asked this plaintiff to employ him as an attorney. While there the defendant told the plaintiff that the court had directed him to get together all of the heirs of plaintiff's father. Together they went to Salinas on February 17, 1917. The next day the plaintiff orally consented to employ defendant as his attorney. An agreement compensating defendant for services was signed, defendant says, "along the latter part of February, 1917." This agreement, although often called for during the protracted trial, was never produced, notwithstanding the defendant often said he thought he had it. The defendant actually commenced to act as the plaintiff's attorney as early as March 29, 1917. On April 12, 1917, the plaintiff signed a grant, bargain, and sale deed to defendant conveying one-third of his interest absolutely. By a subsequent deed he conveyed the remaining two-thirds of his interest in the lands in dispute. This latter instrument refers to another paper "of even date herewith." It was not produced at the trial. All of these papers were dictated to Miss Castro. She was not produced at the trial, nor were her notes. The agreement of employment, it was claimed, took place before the plaintiff's

two sisters. One sister was not produced and the other was not questioned on the subject. The absence of the witnesses not called was not accounted for. The absence of the writings claimed to have been executed, but not produced, was never accounted for. There is evidence that the defendant never informed his client, this plaintiff, that the plaintiff's deed to Mrs. Duarta conveyed no title; nor that there was a standing offer of compromise which afforded this plaintiff all the rights he could acquire by any litigation; nor that, as this plaintiff had already been made a party defendant to the pending suits, the parties litigant necessarily must protect his rights in their attempt to protect their own rights; nor that this defendant must do all the work which he subsequently did do, whether the plaintiff employed him or not. In addition to numerous acts of weak-mindedness shown in the record in numerous small matters, it appears that as early as March 29, 1917, this plaintiff was adjudged incompetent and thereafter appeared through the duly appointed guardian of his person and estate.

On March 29, 1917, the plaintiff deeded to the defendant properties of the value of fifteen thousand dollars; on the twelfth day of April he deeded to him properties of the value of twenty-five thousand dollars, and on the same dates he signed contracts assigning to the defendant rents amounting to several thousand dollars. The trial court found that the value of the services rendered for the plaintiff by the defendant was five hundred dollars. There was evidence in the record supporting each of said valuations. There is testimony to the effect that before the plaintiff signed any of said papers he talked to two or more laymen as to the advisability of so doing. There is no evidence that any of such persons knew of the aforesaid facts which the defendant had failed to state to his client. Yet such independent advice is the sole showing which the defendant made tending to relieve him of the charge of undue influence.

Before taking up the points made by the appellant, it will work in the interest of clearness for us to notice two different rules of law. The first rule to be noticed is stated in section 951 of Pomeroy's Equity Jurisprudence, as follows: "Where there is no coercion amounting to duress,

but a transaction is the result of a moral, social or domestic force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction on the ground of undue influence, even though there may be no invalidity at law." Still referring to that same rule the learned author, in section 955, says: "In the various instances described in the preceding paragraphs there has. been an *actual* undue influence consciously and designedly exerted upon a party who was peculiarly susceptible to external pressure on account of his mental weakness, old age, ignorance, necessitous condition, and the like. The existence of any fiduciary relation was unnecessary and immaterial. The undue influence being established *as a fact,* any contract obtained or other transaction accomplished by its means is voidable, and is set aside without the necessary aid of any presumption." The second rule to be noticed is stated by the same author in section 955 in words as follows: "The single circumstance now to be considered is the existence of some fiduciary relation, some relation of confidence subsisting between two parties. No mental weakness, old age, ignorance, pecuniary distress, and the like, is assumed as an element of the transaction; if any such.fact be present it is incidental, not necessary,—immaterial, not essential." Our Civil Code, sections 1575 and 2235, states the same .rules. That the relation of attorney and client is specially subject to these rules has been directly passed on. (*Metropolis 'etc. Sav. Bank* v. *Monnier,* 169 Cal. 592, [147 Pac. 265].) In that case, at page 598 of 169 Cal. [147 Pac. 268], the court said: "Assuming that, upon another trial, the defense of undue influence will be within the issues, it is proper to point out that a *prima facie* case in support of this defense would be made out by proof that Mr. Patton, prior to and at the time he took the note and mortgage, was acting as attorney for Mrs. Monnier. The relation of attorney and client is of a fiduciary character, and the Civil Code (section 2235) clearly provides that all transactions between a trustee and his beneficiary during the existence of the trust, by which he obtains any advantage' from his beneficiary, 'are presumed to be entered into by the latter without sufficient consideration and under undue influence.' This does not mean that' a trustee

may not deal with his beneficiary. But if he does deal with him in such manner as to obtain an advantage, the trustee has the burden of showing by evidence that the transaction was fair. Certainly, the obtaining of a note for twenty thousand dollars, secured by mortgage, is an advantage, and the attorney, or those claiming under him, cannot safely rest, as they did in this case, without affirmative proof of the facts surrounding the transaction. On the question of the applicability of the presumption declared by section 2235, it is sufficient to refer to *Cooley* v. *Miller & Lux,* 156 Cal. 510, 523, [105 Pac. 981], and authorities there cited. (See, also, *Cooley* v. *Miller & Lux,* 168 Cal. 120, [142 Pac. 83, 88].)''

[1] The appellant makes eleven points. The first point he makes is that the trial court erred in overruling his demurrer to the plaintiff's complaint. The plaintiff set forth his grievance in three counts,—(1) a count, in the ordinary form, to quiet title; (2) and (3), counts as for a breach of trust. The defendant Stuart demurred ''to the complaint'' on the ground that the complaint did not state facts sufficient and on the ground that several causes of action had been improperly joined. Clearly, the first count was entirely sufficient and therefore the demurrer was not good as to that count. This being true, the trial court was justified in overruling the demurrer ''to the complaint'' in so far as it was an attack on the ground that the complaint did not state facts sufficient. (*Pfister* v. *Wade,* 69 Cal. 133, 136, [10 Pac. 369].) [2] The second count commingled and combined allegations showing (1) a cause of action for actual undue influence (sections 951 and 955, Pomeroy's Equity Jurisprudence), and (2) a cause of action for implied undue influence as for an advantage gained by an attorney over his client after such relation had been created (section 955, Pomeroy's Equity Jurisprudence). The second count is not a model of good pleading, but we cannot say that it is subject to the attack that it did not state facts sufficient. (*De Pedrorena* v. *Hotchkiss,* 95 Cal. 636, [30 Pac. 787].) The third count was dismissed and we need not dwell on it. As all three counts involved the transfers from plaintiff to defendant, the second ground of attack, an improper joinder of causes, is without merit. Such combinations are permissible since the

addition of subdivision 8 to section 427 of the Code of Civil Procedure. (*Morris* v. *Judkins,* 36 Cal. App. 413, 414, 415, [172 Pac. 163]; *Lathrop* v. *Francis,* 180 Cal. 182, [180 Pac. 1, 2].)

[3] The defendant complains that the trial court failed to find on a material allegation of the count to quiet title. As the trial court based its judgment on the allegations of the second count in the complaint, the attack is not sound if the court fully found on the issues presented by the second count. Furthermore, the allegation in question was not denied and there was no issue thereon.

Again the defendant contends that "the judgment is not supported by the findings and is contrary to law." In this behalf the defendant argues that the trial court failed to make a finding on a material issue. This point we have just discussed and it does not require further consideration.

Another point is that "The judgment is not supported by the findings in that: It is not true that the plaintiff is now or ever was the owner of the undivided one-twenty-fourth of said real property hereinabove referred to." The answer is that the finding is in the defendant's favor. Also, it is a finding on an issue presented by the first count and the trial court did not rest its judgment in whole or in part on such count.

All of the remaining attacks are to the effect that the findings are not supported by the evidence. No one of these attacks is supported by the record. Taking up first the findings made responsive to issues tendered by the complaint, assignments of insufficiency 2, 3, 4, 5, 6, and 7 are not well founded. As to some minor matters the evidence was conflicting but as to no single one of those findings can it be truly said there was no evidence. As to issues tendered by the defendant's answer, he complains, in points 8 and 9, as to the findings made thereon. It suffices to say that the evidence abundantly supports the findings.

As stated above, the plaintiff pleaded in his second count a combined charge of (1) *actual* undue influence and (2) a violation of fiduciary relations. There is evidence in the record supporting that count when weighed by the calls of either rule.

We find no error in the record and the judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 30, 1921.

All the Justices concurred.