[Civ. No. 3877. Second Appellate District, Division Two.—December 20, 1922.]

JAY E. CURRIE et al., Respondents, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation), Appellant.

[1] DEEDS—SALE UPON CONDITIONS SUBSEQUENT—CONVEYANCE OF REVERSIONARY ESTATE—RE-ENTRY—INJUNCTION—QUIETING TITLE.— Where the owner of a tract of land sells a portion of it and it is expressly stipulated between such vendor and the purchaser that the deed is made and accepted upon certain express conditions subsequent which are that certain things shall not be done, and if done the title to the property shall revert, if such vendor thereafter conveys away its reversionary estate and therefore loses its entire interest in the property, it will not only be denied relief, should it institute an action for re-entry or injunction for condition broken, but the purchaser may maintain an action to quiet title as against it.

[2] ID. — CONSTRUCTION OF RESTRICTIONS — EASEMENTS IN GROSS — RIGHT OF RE-ENTRY.—Where a deed to a lot, which is one of a number in a tract sold under restrictions by a common grantor, contains the provision that such deed "is made and accepted upon the following conditions subsequent," followed by certain enumerated restrictions concerning the use and occupation of the

premises, and concludes with the provision "that a violation of any of said conditions shall work a forfeiture of title thereof" to the vendor, "its successors or assigns," but such deed does not disclose that the land conveyed is part of a larger tract, the balance of which the grantor still retains, or that the restrictions are intended for the benefit of other lands, or that their benefit is to inure to, or pass with, other lands, and it does not contain any description or designation of the land which is to be the dominant tenement, such restrictive provisions are conditions and not covenants; but whether such restrictions be held to be conditions or covenants, they inure to the benefit of the grantor and its assigns, and not to the owner of certain lots of land and the various successors in interest of such lot owners.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Burnell, Judge. Reversed.

The facts are stated in the opinion of the court.

Otis H. Castle, Elvon Musick, H. C. Allen, Jr., Farrand & Slosson and Leonard B. Slosson for Appellant.

Hibbard & Kleindienst for Respondents.

CRAIG, J.—In this action the plaintiffs seek a decree quieting their title to real property. The complaint is in the ordinary form of such actions. The answer of the Title Insurance and Trust Company admits plaintiff's ownership, but alleges as a defense that the title is subject to certain conditions or restrictions contained in the deed by which the defendant corporation transferred its title to plaintiff's predecessor in interest, one W. H. Hay. The clause relied upon is in the language ordinarily used in similar transactions. It begins, "this deed is made and accepted upon the following conditions subsequent," then follows a provision against the use of a building erected thereon for certain business purposes, the erection of oil derricks, dwelling-houses under a certain cost, and the occupation, etc., of the premises by any person of African descent; the paragraph concludes as follows: "and that a violation of any of said conditions shall work a forfeiture of title thereof to the said party of the first part, its successors or assigns."

It is alleged in the answer that before plaintiffs acquired any interest or title in the property defendant corporation

was the owner of all the lots in any tract of which plaintiff's property is a part; that the corporation thereafter conveyed all of said lots to divers persons; that in all of the conveyances there was inserted conditions or restrictions substantially the same as those in the deed to Hay; further, that these conditions or restrictions were placed on all of the lots "for the equal benefit of each and every lot within said tract and in pursuance of a general scheme for the development and improvement of said tract and said lots." Plaintiffs demurred generally, and the trial court sustained the demurrer without leave to amend and judgment was entered for the plaintiff.

[1] At the outset the appellant challenges the right of respondent to maintain an action to quiet title even though it be conceded for the purpose of the discussion of this phase of the case that the corporation has ceased to possess the right to relief by injunction or forfeiture. As authority for this contention we are cited to *Strong* v. *Shatto*, 45 Cal. App. 29 [187 Pac. 159]. Our attention is called to the following language used in that opinion: "But the rule does not go to the extent of permitting parties whose land is subject to the legal restraint of such limitations to bring action to quiet their title against such contractual obligations, because of changed conditions. Contractual obligations do not disappear as circumstances change. It is only the granting of equitable relief, and not the binding force of the restrictive covenant, that is affected by a change in the conditions." The change in the instant case, if there is one, is not due to a change in conditions concerning the property but to one in the ownership of the property; a change which is the result of contract. It is not an alteration in conditions, but one of title. While contractual obligations do not disappear as the result of a change in circumstances, such obligations may disappear through additional agreements and the voluntary transfer of one's contractual rights. The language quoted by appellant was directed toward the claim of the plaintiff in that case that because the property had so changed that it had become more valuable for business than for residence purposes, a court of equity should quiet title of lot owners against the conditions subsequently imposed by their contracts. It was not claimed that the grantor of the property had lost his right of re-entry by reason of any

act of his own, contractual or otherwise, but only because conditions with which he had nothing to do had changed. In the instant case the plaintiffs seek to have their title quieted as against the defendant corporation. On the issue presented by that defendant's answer the plaintiffs assert that the corporation has conveyed away its reversionary estate and therefore has lost its entire interest in the property. The complaint alleges that the corporation still claims to possess its former estate, which would constitute a cloud upon plaintiffs' title. If the plaintiffs' theory of the case is correct, the defendant corporation would not only be denied relief, should it institute an action for re-entry or injunction, but in addition it has divested itself of all property right and reversionary interest in the land as completely as though such right had never been possessed, which was the fact in *Werner* v. *Graham,* 181 Cal. 174 [183 Pac. 945], in which a decree quieting title was upheld. The restrictive provisions in this deed are in the form of conditions and not covenants. It is clearly stipulated that the deed is made and accepted upon certain express conditions subsequent which are that certain things shall not be done, and if done the title to the property shall revert. The grantor retained to himself and his heirs and assignees the reversion. (Civ. Code, secs. 768 and 1046; *Johnston* v. *Los Angeles,* 176 Cal. 479 [168 Pac. 1047]; *Werner* v. *Graham, supra.*)

If these restrictive provisions were intended as covenants, easements in gross might be created as well as easements appendant. In this regard the instant case is directly within the scope of that part of the opinion in *Werner* v. *Graham,* in which the court passed upon the existence of a servitude in favor of lots which the grantor, the subdividor of the tract, still owned when he sold the lot whose title was sought to be quieted and to which lot he had given a quitclaim deed. In discussing that question the opinion reads: ''The situation in this respect is that one, the owner of a tract of land sells a portion of it, exacting of the grantee restrictive provisions as to its use, but without a word indicating that the land conveyed is part of a larger tract, the balance of which the grantor still retains, or that the restrictions are intended for the benefit of other lands, or that their benefit is to inure to, or pass with, other lands, and without

any description or designation of what is an essential element of any such servitude as is claimed, namely, the land which is to be the dominant tenement.'' This language fits the facts shown in the record before us, both in that there is nothing in this deed indicating that the land conveyed is a part of a larger tract, the balance of which the grantor still retains or that the restrictions are intended to benefit other lands or to pass with them, and further, that no other lands are described or mentioned as the dominant tenant. It is true that in the instant case the answer avers that after conveying the lot in question the defendant conveyed all of the other lots in the tract to other persons with similar restrictions and that these restrictions and conditions were placed thereon for the benefit of each lot in the tract and as a part of a general scheme for the improvement of the entire tract, but these allegations fall far short of stating that the deeds to the various lots contained any stipulation that the restrictions in them were a part of a general plan to improve the tract and the other lots therein and for the benefit of such tract and lots. These matters may all have been in the mind of the grantor and yet be of no avail to impose a servitude on the lots conveyed unless the grantee also joined in the plan and gave his consent to the interchange of servitudes involved. This very point is the one which was controlling in the determination of *Werner* v. *Graham.* What was there said was not *obiter dicta.* The supreme court stamped it as ''the crux of the present case.'' In distinguishing *Alderson* v. *Cutting,* 163 Cal. 504 [Ann. Cas. 1914A, 1, 126 Pac. 157], from the one then under consideration, it said, ''The difference between such a case and the one at bar is that here there is no language in the instruments between the parties, that is, the deeds, which refers to a common plan of restrictions or which expresses or in any way indicates any agreement between grantor and grantee that the lot conveyed is taken subject to any such plan.'' It then holds that this difference is material; that it is not the intent of the original owner that governs in such cases, but the joint intent of himself and grantees; and as an additional reason for its decision it is said that each deed must be construed as of the date it was given and hence, that mutual servitudes cannot have been created where the only restriction contained in any deed refers to the partic-

ular lot thereby granted. The opinion further points out that even though each grantee understood that the restrictions were exacted as a part of a general scheme the result would be the same, since the deeds constitute "the final and exclusive memorials" of the understanding of the parties.

[2] The language of the supreme court to which we refer was directly applicable to the issue involved. Deeds containing building restrictions had been made by the subdividor of a tract of 132 lots. Some of the instruments were executed before and some after the one to the lot whose title was sought to be quieted. The same restrictions were placed in each of the deeds. In selling the lots the grantor had represented to the purchasers that he was exacting the same restrictions from all. The respective purchasers impliedly consented thereto and relied thereon and fully appreciated the fact that the imposition of the restrictions were a part of a general plan. In view of the decisive and certain language and unanswerable reasoning used, and of the complete consideration given the subject by the supreme court in the *Werner* v. *Graham* case in passing upon this exact question, we need not consider the matter further. As we interpret the authorities and apply them to the facts presented, the restrictive provisions were conditions and not covenants. But even though we should class them as covenants it must be held that they were intended to create easements in gross. In either event they inured to the grantor, the Title Insurance and Trust Company and its assigns, and not to the owner of certain lots of land and the various successors in interest of such lot owners.

The judgment is therefore reversed.

Finlayson, P. J., and Works, J., concurred.