[Civ. No. 13318. Second Dist., Div. Two. Dec. 16, 1941.]

RAPHAEL I. ALEXANDER, Respondent, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation) et al., Appellants.

James A. Miller and Philip C. Farman for Appellants.

Fred H. Luth, Earl G. Read and Arthur Lasher for Respondent.

SCOTT (R. H.), J. *pro tem.*—Defendants appeal from judgment for plaintiff in suit to remove restrictions on certain real property.

Plaintiff brought this action for declaratory relief and to quiet title to lot 162, tract 3912, located on the southwest corner of Wilshire Boulevard and Tremaine Street in the city of Los Angeles. In February, 1921, the corporation defendant, as owner of the real property known as tract 3912, executed and had recorded a declaration of restrictions, including one limiting the use of the lots to single residences. This case was brought on the theory that conditions in the district where the lots were located had so changed as to make it inequitable to enforce the provisions limiting it to use for single residences. It was tried in May, 1940, and judgment was rendered for plaintiff against the corporation defendant as trustee and defendant Barry. The restriction

was held to be no longer valid or binding upon plaintiff's property and therefore unenforceable. Other restrictions concerning the same property were not affected by the decree.

Three questions are submitted for our consideration on this appeal:

(1) Was the evidence sufficient to uphold the finding that it would be inequitable to enforce the restriction?

(2) Had the defendant corporation as trustee waived and abandoned the restriction and reversionary right so as to be estopped from asserting it?

(3) Was the plaintiff required to serve the beneficiaries for whom defendant corporation as trustee held the reversionary right?

The trial court found that defendant Barry is representative and manager of a syndicate which has as its sole assets the reversionary interests in tract 3912 together with some money which it received as consideration for relinquishment of this reversionary interest in certain lots in the tract. It does not own any of the real property in the tract. Whenever any transaction or litigation has arisen concerning the reversionary interests held by defendant corporation as trustee it has been referred to Barry. He has secured legal counsel, disposed of reversionary rights and paid the costs. The syndicate which Barry represents in all these matters has acted through defendant corporation as trustee.

Tract 3912 is bounded on the north by Wilshire Boulevard, on the east by Rimpau Avenue, on the south by Olympic Boulevard and on the west by Longwood Avenue. At the time this suit was brought 1114.17 feet of frontage of the tract on Wilshire Boulevard was already unrestricted as to business use; only 650.17 feet remained subject to the restriction. The southeast corner of Wilshire and Rimpau, opposite to the corner of this tract, is improved with a three-story building occupied by an insurance company. The only improvements on Wilshire frontage of the tract are plaintiff's house and the residence of a neighbor on the lot adjoining it on the west. Across Wilshire, on the north side, the lots contiguous to or facing on the boulevard and opposite to and extending east of the tract, are unimproved except for the grounds of a high school. The last residence built on Wilshire Boulevard from a point many blocks east and extending

west about five miles to the Los Angeles city limit is that of plaintiff, built in 1926.

It appears that about 1921 a portion of an old ranch was subdivided and sold under an instrument of trust held by defendant corporation as trustee. Wilshire Boulevard was then a narrow country road. It has since been widened, paved and lighted. Assessments and taxes have greatly increased; public transportation and private vehicles fill it with noises, odors and other disturbances. The trial court found that the property is no longer suitable or desirable for residential purposes; that it now has only a small market value for such purposes and is now wholly business property, and that a large gasoline service station occupies a lot diagonally across Wilshire Boulevard from plaintiff's lot.

It further appears that Barry, who is a defendant in this case, brought suit against this corporation defendant in 1928 to quiet title to two lots, numbers 212 and 213, in this same tract, for the purpose of removing the same restrictions, and obtained a judgment accordingly. He brought another suit against all the individual lot owners in the tract, except those whose property already had been exempt from operation of the restriction, for the purpose of securing individual judgments against them to like effect. Judgment was obtained against all of them by default, waiver or consent. In a suit against this trustee corporation one Leon Kaufman obtained a similar judgment as to lots 28, 29 and 30, which are 847 feet east of plaintiff's lot 162. They start at Wilshire Boulevard and extend south to the next street.

In his suit against defendant corporation Barry paid $5000 to the corporation for permitting him to get a consent decree. In the suit brought by Kaufman to release the three lots it cost him $8000, which he paid the corporation, to obtain a similar decree.

Changes which have taken place in this section of the city of Los Angeles have resulted in the removal of similar restrictions affecting adjacent and nearby tracts of land. In *Forman* v. *Hancock*, 3 Cal. App. (2d) 291 [39 Pac. (2d) 249], judgment was upheld relieving plaintiff of restrictions on land located to the west and across Wilshire boulevard. In that case the court said, at page 296: ''The evidence adequately supports the findings and judgment to the effect that the changed conditions surrounding the premises in question

which have occurred since the purchase of the lots render it inequitable and unreasonable to enforce the restrictive clauses of the deeds limiting the use of the lots to residential purposes, relieving the grantees therefrom and authorizing the plaintiff to construct structures thereon and use the same for business purposes. It is the established law of this state that a grantee of real property is entitled to be relieved of the restrictive provisions of his deed of conveyance before the breach thereof which limits the use of his property to residential purposes and prohibits the erection or use of buildings thereon for business or commercial purposes when it appears that conditions affecting the property which have occurred since the purchase thereof have changed so as to render the property unsuitable or useless for the purpose to which it was originally confined. (Citing numerous cases.)''

Our Supreme Court in *Hurd* v. *Albert,* 214 Cal. 15 [3 Pac. (2d) 545, 76 A. L. R. 1348], at p. 23, has declared the leading case in this jurisdiction to be *Downs* v. *Kroeger,* 200 Cal. 743 [254 Pac. 1101], decided in 1927. Since that year numerous cases have arisen, including some of those relied upon in *Forman* v. *Hancock, supra.* In each of these cases, however, the facts were measured by the same equitable rule.

In the instant case the evidence adequately supports the findings and determination in favor of plaintiff. It discloses a situation in which the reversionary right is held by an entity which is not the owner of the land in the same tract and cannot claim that its right as a landowner would be adversely affected as to use or value by removal of the restriction. It is held by a corporation as trustee for the syndicate which has disposed of all the property in the tract under restrictions as to use. These obviously had as their basis the benefit to be conferred on other property in the same tract. It may be questioned whether such a restriction may be enforced by anyone other than the owner of part of the land for the benefit of which the restriction was imposed. (*Young* v. *Cramer,* 38 Cal. App. (2d) 64 [100 Pac. (2d) 523].) This vendor, having sold the land and having left in its hands the bare reversionary right, is in the extraordinary position of being the owner of rights usually attributable to the owner of a dominant tenement, retaining them while selling the entire tract of land under

restrictions which make them all servient to its bare and body-less right. Being in this position, it has not concerned itself with the enforcement of this equitable right for the benefit of those landowners who purchased their property with a knowledge of and doubtless in reliance upon the restrictions in those earlier days when they appeared just and proper. On the contrary, this vendor has conceived it proper, for a substantial consideration amounting to $13,000, to relieve five lots of the restriction and to waive its reversionary right thereto. This money was divided among the members of the syndicate. Defendant Barry, as above noted, was plaintiff in one of the suits, paid $5000 to relieve his two lots of the restrictive burden, as manager of the syndicate saw that it was distributed among its members and as one of the members shared in the payment.

Such conduct on the part of defendants and the members of the syndicate whom defendants represent constitutes evidence of the inequity of enforcing the restrictive provision against this plaintiff. The trial court found that it operated as an estoppel against defendant Barry, and might well have considered whether it would operate as an estoppel to preclude any others who were parties to such transactions from asserting any such claim of adverse right. (*Wedum-Aldahl Co.* v. *Miller*, 18 Cal. App. (2d) 745 [64 Pac. (2d) 762].) It did find that the other lot owners by their acquiescence, which they manifested by consenting to a judgment against them in the case above discussed, had demonstrated that they had no further interest in upholding the restrictions here attacked. We conclude, therefore, that the evidence was adequate to support the determination of the trial court favorable to plaintiff.

In considering whether any further parties were required to be joined to enable the trial court to effectually dispose of the issues in this case, we have examined into the relationship of defendant corporation to defendant Barry and the syndicate. In the previous cases above mentioned affecting property in this tract the contention that the members of the syndicate were necessary parties had not been raised. Nor was evidence introduced in this case indicating lack of authority or power in defendant corporation. The trustee appeared and contested the action, admitting by its pleadings claim of ownership of the reversionary rights involved. The

trial court found that because of the number and uncertainty as to the members of the syndicate, who were the beneficiaries of the trust, it would be an oppression on plaintiff and was unnecessary to make all or a substantial part of the beneficiaries parties to the action. It further found that the controversy in the instant case is one between the trust and strangers, and not between parties to the trust, trustor, trustee or beneficiaries. As noted above, whenever such an action as this has been brought the defendant corporation has referred it to Barry. He has referred it to a syndicate committee, which has hired an attorney to contest or settle the case, and it has paid whatever costs were incurred. Under such circumstances, where a trustee in the performance of its duties is called upon to defend the interests of the beneficiary, it may do so without the necessity of having the beneficiaries joined as parties defendant, provided the trustee acts in good faith and its own interests are not in conflict with those of the beneficiary. (*Johnson* v. *Curley,* 83 Cal. App. 627 [257 Pac. 163].)

A court of equity does not permit beneficiaries to come into court through their representative for the express purpose of defending rights claimed by them adverse to plaintiff, and when they have concluded the trial of the case on its merits, to urge that this representative, whom they have chosen to act for them and who has been speaking for them alone throughout the trial, is powerless and without authority to do that which it has in fact done at their behest and on their behalf. In its brief the defendant corporation intimates that perhaps it does not know who the beneficiaries are or what may be the terms of the very trust agreement under which it has been operating for twenty years. There is nothing to indicate that it made any effort to clear up any obscurity in matters which it now claims are essential. The cases of *Lee* v. *Silva,* 197 Cal. 364 [240 Pac. 1015], and *Title Guarantee & Trust Co.* v. *Henry,* 208 Cal. 185 [280 Pac. 959], are relied upon by appellants but are not in conflict with the views herein expressed.

Judgment affirmed.

Wood (W. J.), Acting P. J., and McComb, J., concurred.